### Davidson v. Commonwealth.

(Decided September 28, 1928.)

## Appeal from Warren Circuit Court.

1.  Larceny.—Evidence held sufficient to sustain conviction of grand larceny by stealing two bales of woven wire and converting them to defendant's own use against owner's consent.

2.  Criminal Law.—Ground of motion for new trial that court failed to instruct jury on whole law of case held without foundation, where instructions given without criticism conformed to usual instructions in like cases, and to statements of Court of Appeals concerning them in opinion on former appeal.

OLIVER MANSFIELD & MANSFIELD for appellant.

J. W. CAMMACK, Attorney General, and SAM B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The grand jury of Warren county indicted the appellant and defendant below, Jotty Davidson, whereby he was accused of committing the offense of grand larceny, by stealing two bales of woven wire from Marion Sledge, and converting it to his own use, against the con-

sent of its owner. At his trial thereunder he was convicted, but the judgment pronounced on that verdict was reversed on appeal therefrom to this court, because of erroneous instructions. The opinion on that appeal will be found in 219 Ky. 251, 292 S. W. 754, wherein the facts as developed on that trial are substantially stated. From a second conviction in the same court, he prosecutes this appeal.

In his motion for a new trial on the second conviction only four grounds are relied on, which are: (1) That the court erred in overruling his motion for a peremptory instruction of acquittal; (2) because the court erred in failing to instruct the jury upon the whole law of the case; (3) that the verdict is flagrantly against the evidence; and (4) that it is not sustained by the evidence. It will at once be seen that grounds (1), (3), and (4) call in question the sufficiency of the evidence to sustain the conviction, and each of them involves substantially the same complaint, and we will first dispose of them together.

The prosecutor and the defendant were farmers in Warren county, residing a short distance from the city of Bowling Green and about one mile apart. The former had missed several articles of property from his barn and from his barn lot, and when he purchased and put into the lot near the barn the two bales of wire, he marked them by wrapping around one of the brace wires some very much smaller wire of a particular description and he showed the marking to a couple of his neighbors. A short while thereafter the two bales of wire as so marked disappeared, and some months later Mr. Sledge had occasion to pass through or look into defendant's barn, while on a trip to his premises for the purpose of collecting a debt from him. He discovered two bales of wire partially covered up with other articles in the barn, and upon examination found them to be the ones that he had marked in the manner indicated. He later caused the two neighbors who had seen the marking to examine the bales while in defendant's possession, and they also recognized the marking as being that made by Mr. Sledge. The matter was not mentioned by the latter for some time thereafter, because he was postponing it until he succeeded in collecting the debt due from defendant. It was finally paid by Sledge purchasing from defendant some hogs, and after they were loaded in the wagon, and had thus been delivered, Sledge mentioned the matter to

defendant, and he then claimed to have purchased the wire from a named firm in Bowling Green, when he was informed by Sledge that the firm that he mentioned did not handle that brand of wire. The defendant then stated that he had purchased it from another firm, naming it, when Sledge informed him that no such firm did business in Bowling Green, and then defendant stated that he purchased the wire from Thomas & Hinton, who were dealers in hardware in Bowling Green. Sledge then went away, and in a short while went to the store of Thomas & Hinton, and there learned that no such purchase had been made by defendant from it.

Mr. Sledge then procured two neighbors who had seen him mark the wire and went to defendant's house, and in a conversation they had defendant said that he would tell Mr. Sledge the person from whom he got the wire, but only out of the hearing of the two neighbors, who had gone along and were then present. Sledge would not agree to any such secret conversation and departed, followed by his procuring a warrant and having defendant arrested. On his examining trial he testified that he had procured the wire from a junk dealer and wire peddler, who had driven up to the field, in which he was plowing near his barn, with a load of junk in a wagon and the two bales of wire on top, which he later bought for $15 (about half of its proven value), and rolled it off in his lot, and that he later put it in his barn. To some extent he was corroborated in that story by a tenant on his place by the name of Green. Defendant stated that at the time he did not know the name of the one from whom he bought the wire, but later learned that his name was Pierce. He was asked if Pierce was still living in Bowling Green, and, if so, whether he was still in the junk business, and he stated that he did not know; but he admitted that he had made no inquiry to ascertain the whereabouts of Pierce, nor had he obtained a subpoena for his attendance at the examining trial. Neither did he endeavor to obtain the testimony of Pierce at either of his trials under the indictment, and so far as this record shows Pierce may still be residing in Bowling Green, without ever having been called on to corroborate defendant as to the transaction of the purchase of the wire as detailed by him in his evidence.

In the face of the testimony as thus outlined, counsel for defendant with apparent seriousness argue in their brief that not even a scintilla of evidence was introduced

by the commonwealth, and that the court should have instructed the jury to find their client not guilty. With equally apparent confidence they argue that the verdict of guilty was flagrantly against the evidence, and not sustained by it; and such arguments are made, notwithstanding the former opinion adjudicated them adversely to the contentions of counsel. But, if there had been no such adjudication, we have no hesitancy in holding that the evidence of defendant's guilt is about as strong as any that has ever come under our observation, where the testimony was circumstantial in its nature. We can hardly imagine a stronger case of guilt being made out under a plea of not guilty. Of course, defendant denied his guilt in his testimony, and he was corroborated to some extent as to his purchasing the wire from the fictitious man, Pierce, by the testimony of his tenant; but the facts that defendant admitted, and which we have hereinbefore recited, are so convincing as to leave no reasonable doubt of his guilt. It therefore cannot be said with any degree of accuracy that either grounds (1), (3), or (4), relied on in the motion for a new trial, have any foundation for its support.

Ground (2), in the motion for a new trial, is not argued in briefs; but, if it had been, there is not the remotest foundation for it. None of the instructions given by the court are criticized by counsel, they not even referring to them in any manner. We have examined them, and they not only conform to the usual instructions in grand larceny cases, but likewise conform to what was said concerning them in our opinion on the first appeal.

Finding the record utterly barren of any grounds for reversing the judgment, it is affirmed.